MENAS GEORGE *v.* WILLIAM C. GERENY, ET AL.

[No. 5, October Term, 1946.]

*Decided November 20, 1946.*

236

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William Greenfeld* with whom was *Bernard M. Gold-stein* on the brief, for the appellant.

*Solomon Liss* for the appellees.

GRASON, J., delivered the opinion of the Court.

Menas George, trading as George Brothers, prior to 1941 made chocolate coated novelty candy, known in the trade as "hollow goods." The production was sold to the wholesale trade, and in that year he carried on this operation in a building on Hillen Street, in Baltimore City. He also had a store at Montford Avenue and Monument Street, where he sold candy that he made on Hillen Street at retail. In the production of this candy he used an equipment consisting of molds and other things. The equipment he used for the making of this novelty candy was made in Germany. He owned two sets, one of which was older and less complete than the other. The candy he made was sold during the Easter season to the wholesale trade. In making this candy he used chocolate supplied to him under contract by the Hooton Chocolate Company, of Newark, New Jersey.

The better and more complete set of these two equipments used in the making of this candy was sold by appellant to appellees for $1,500. At that time appellant had discontinued his wholesale production, which he operated on Hillen Street, and all of this equipment was packed in barrels and stored on the premises where he conducted his retail store. Appellees did not inspect the equipment, but sent their truck to appellant's retail store and the goods were taken to the place of business of appellees, on Lombard Street, in the late fall or early winter of 1941. The appellees are William C. Gereny and Ernest S. Vandora, who trade as Virginia Peanut Company. They made no complaint that they did not

receive all of the equipment they agreed to buy. It was set up by appellees at their place of business and operated by them, and they have paid to appellant the full purchase price. There is, therefore, no dispute that the goods purchased were not received, nor that the purchase price has not been paid in full.

The appellant agreed to instruct appellees how to make candy with this equipment and he was employed by them for this purpose during the late fall and in the month of December, 1941. Appellant testified (which is not contradicted) that he had some of the Hooton chocolate at his retail store and some of this was used in the molds after appellees started operation. When this supply was exhausted appellees used Hershey chocolate, which was found to be unsatisfactory. There can be no doubt, from the evidence in this case, that appellant sold to appellees his wholesale business, which he operated on Hillen Street. He turned over to them a list of his customers, prices charged, and names of stores where he bought certain materials which he used in making this candy. Some of the people who worked for him and knew how to operate this equipment were employed by appellees. The salesman who solicited the wholesale trade for him and sold his candy, at the suggestion of appellant, applied to appellees and was employed by them to solicit the trade. Appellant made no complaint when the appellees printed in a circular published by them that they had purchased his wholesale business. During negotiations leading up to the sale of the wholesale business, appellees knew that the appellant operated a retail store where he made and sold novelty candy. It is perfectly clear that the dealing between the parties was not intended to affect in any way appellant's retail business.

Mr. Gereny was in charge of the operation of appellees' plant. Appellant testified that when the Hershey chocolate was found to be unsatisfactory Gereny asked him if he could get chocolate from the Hooton company, and appellant states that to help them out he agreed that directions be given to the Hooton company to ship choco-

238

late to him in care of appellees. He states that he did
not intend to give up and transfer to appellees his con-
tract with the Hooton company for chocolate, but, as
he could not store the chocolate at his retail store, he
agreed that the chocolate would be received by appellees
and that they would deliver to him sufficient chocolate
to make candy, which he sold at retail, and that they did
deliver ten or twelve bales of this chocolate to him each
year, until 1945, when they ceased to do so. In ac-
cordance with this understanding, appellees dictated a
letter, which appellant signed, to the Hooton company to
ship chocolate to appellant, in care of appellees at their
place of business. Each year thereafter a similar letter
was dictated by appellees and signed by appellant. When
appellees failed to deliver to appellant the chocolate he
needed to make candy for his retail trade he notified the
Hooton company to cease shipments in his name in care
of appellees at their place of business. As a result of
this action, appellees filed their bill of complaint alleging
that the purchase of the business included appellant's
right to get chocolate from Hooton Chocolate Company.
In effect, they claimed that under the circumstances this
right was assigned to them and it passed to them when
they purchased the business which appellant had con-
ducted on Hillen Street.

The lower court decreed that appellant be enjoined
from interfering with the delivery of chocolate from the
Hooton company to appellees and that appellees be
required to deliver 15 per cent. of the chocolate they
received from the Hooton company to the appellant.
From this decree an appeal was taken by appellant to
this court.

No authorities were cited to this court to sustain the
contention that the sale of a business would comprehend
a contract which the vendor had to purchase merchandise
from a third person. Without deciding the question, it
may be said to be somewhat tenuous that such a contract
would pass with the sale of a business. Certainly Hooton
Chocolate Company could reject an arrangement entered

into by the parties hereto that chocolate which they were under a contract to deliver to appellant should in the future be delivered to appellees. But passing this point, we proceed to inquire whether the contract made by the parties for the sale of this business included a right of appellees to receive the chocolate furnished to appellant, and that the appellant gave up his right in favor of appellees to receive the chocolate from Hooton Chocolate Company. This contract was not reduced to writing, but was entirely verbal.

Mr. Vandora testified that the contract in question was entered into in the spring of 1941 and that at that time the second world war was going on and that he was apprehensive about the supply of chocolate. He was asked why he didn't get a letter from the appellant transferring to his firm the supply of chocolate that the Hooton company had contracted to furnish the appellant. He said he did not think he needed to do that. Mr. Vandora testified that during negotiations "he (meaning George) spoke to me as well as to Bill (that is Mr. Gereny) about particularly using Hooton's chocolate because that was the most adaptable for that particular line of work." He further testified that George said: "In view of the fact that the time was late—it was the middle of January (1942), it was best to let it (meaning the chocolate) come in his care, and that he would bring the invoices over to us, and we would pay them direct, which we did."

Gereny testified that appellant offered to sell "his wholesale seasonal business that he had a place on Hillen Street that he had just closed out." He was asked the question: "Other than the physical things that came there, were you to get anything else?" A. "I was supposed to get his services. The understanding between him and I was that he was going to teach me personally how to handle the chocolate, how to fill those molds. It required a technique—you had to learn how to feel the temperature of the chocolate, and he very patiently taught me for about eight weeks or so—I don't recall how many weeks, but he taught me at my place, 515

W. Lombard." He further stated that sometime in December, 1941, George told him that "he had to have a particular chocolate to make a success of the business," and he gave his reason therefor. Q. "Did he tell you why it was necessary for you to get your chocolate from Hooton Brothers?" A. "So it will be suitable for that business." He was asked the question: "At what date did Mr. George learn that the chocolate that you had on hand was not best suitable for making chocolate novelty candies?" A. "When he first approached me to sell his business he asked me what brands I was keeping, and right then and there he knew those brands were not suitable for the business we were buying." This is the only testimony offered by appellees tending to show that the appellant's contract with the Hooton company was to pass to appellees as a part of the business. While both appellees assert that this was so, the testimony of Mr. Vandora as to this seems to leave some doubt. He did not get an assignment from the appellant of his contract with the Hooton company. At the time of the transfer Mr. Vandora expressed apprehension about the continuing supply of chocolate because of world conditions. It is hard to understand why he did not press for an assignment of the appellant's contract with the Hooton Chocolate Company. His only reason why he did not do this was that he did not think it was necessary. The testimony of Gereny with reference to this matter is vague. He states that appellant knew at the time of the negotiations for the sale of the business that it was necessary to use Hooton's chocolate in the molds. This is far short from asserting that appellant agreed as a part of the contract for the sale of the business that he would transfer to them his rights in the contract that he had with the Hooton Chocolate Company for supplying chocolate. The appellant testified that he did not agree to transfer his contract with the Hooton Chocolate Company to appellees and that this had nothing to do with the sale of his equipment for the making of chocolate candy to appellees. His testimony shows that he retained a set of

equipment for the purpose of making candy to sell at his retail store. From all the evidence in the case, we think it is a reasonable view that appellant held on to his contract with Hooton Chocolate Company so as to insure a necessary supply of chocolate for the making of candy by him for sale at his retail store. This being so, the decree of the lower court must be reversed and the bill of complaint dismissed.

*Decree reversed, bill of complaint dismissed, with costs to appellant.*